IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
<u>FAYETTEVILLE DIVISION</u>

JAY AND CONNIE POTTER and
AMERICAN RV PARK, INC.                                    PLAINTIFFS

       vs.                    Case No. 06-5194

CITY OF TONTITOWN,
TONTITOWN PLANNING COMMISSION,
TONTITOWN WATER AND SEWER COMMISSION,
WASHINGTON COUNTY ELECTION COMMISSION,
ANTHONY DOSS, DEBRA A. CARTER,
DENNIS W. CATER, JOE GONZALEZ,
GUILLERMO GONZALEZ, CURTIS R. BROWN,
NIN K. BROWN, KENT GILL,
BARRY L. MASON, CAROL A. MASON,
MICHAEL STEPHENS, JENNIFER STEPHENS,
HELEN M. McGARRAN, GUY ROSENCHEIN,
CHARLES MICHAEL TAYLOR,
SHEILA RENE TAYLOR,
and;
MICK WAGNER                                              DEFENDANTS

<u>BRIEF IN SUPPORT OF MOTION TO DISMISS  OR
IN THE ALTERNATIVE FOR ABSTENTION</u>

I.      INTRODUCTION

On October 10, 2006, Jay Potter, Connie Potter, and American RV Park, Inc. filed their

action against multiple defendants including the City of Tontitown, Tontitown Planning

Commission, the Tontitown Water & Sewer Commission (referred to herein collectively as

"Tontitown"), Mick Wagner (Tontitown Water and Sewer Commission Chairperson) individually,

and sixteen of Plaintiffs' neighboring property owners (referred to in the Complaint and this Brief

collectively as "the Annexors").  The Plaintiffs seek damages pursuant to 42 U.S.C. §1983, 42

U.S.C. §1985, and 42 U.S.C. §1988 and further assert State law claims for civil conspiracy, tortious

1

interference of business expectancy, and declaratory judgment preventing the Washington County Election Commission from counting the votes from the upcoming annexation election.  For the reasons stated more particularly below, Tontitown respectfully submits that each of Plaintiffs' claims should be dismissed as a matter of law.  Alternatively, this Court should abstain from considering Plaintiffs' claims.

## II.    FACTS

Plaintiffs' Complaint contains numerous factual inaccuracies.  However, for purposes of this Motion to Dismiss, Plaintiffs' factual allegations contained in the Complaint are assumed true. Plaintiffs' Complaint alleges that the Potters own certain real property located outside of the City limits of Tontitown, Arkansas, but within the City's planning area as defined by Ark. Code Ann. §14-56-203.  Complaint at ¶ 24. Plaintiffs desire to place an RV Park (American RV Park, Inc.) on their property and sought development approval from the City of Tontitown and Washington County. Plaintiffs further allege that certain conditions were placed on development approval by the City of Tontitown with which Plaintiffs disagree, namely road improvements and sewer regulations. Complaint at ¶¶ 39-42.   During the approval process, a period of six months passed without action being taken by Tontitown.   Complaint at ¶ ¶ 32-36.   On or about August 2, 2006, Plaintiffs determined that they did not need Tontitown's approval and withdrew all pending applications then before the City of  Tontitown and its Commissions.  Complaint at ¶ 46.

Plaintiffs' Complaint further alleges that Mick Wagner, in his personal capacity, met with certain persons who were not then citizens of Tontitown to discuss annexation of said persons' property, along with Plaintiffs' property into the City.  The alleged purpose of the annexation was to make Plaintiffs' property subject to the more stringent regulations applicable to developments

within the City limits so as to destroy the viability of the project.  Complaint at ¶ 47.   It is further alleged that some of the Annexors appeared before the County Court at the Annexation hearing and stated they wished to be annexed in order to prevent the RV Park. Complaint at ¶ 73.

## III.    LAW AND ARGUMENT

### A.    Standard of Review.

In ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff and accepts the allegations in the complaint as true.  *Stone v. City of Hot Springs*, _____ F.Supp. 2d. _____, 2006 U.S. Dist. LEXIS 31171 (W.D. Ark. 2006) (granting defendant municipalities' motion to dismiss with regard to plaintiff's 42 U.S. C. §§ 1983 and 1985 claims resulting from municipalities regulatory efforts).  While the factual allegations of the Complaint are assumed true, mere conclusory allegations without supporting facts are insufficient to avoid dismissal.  *Id.*

### B.    Plaintiffs' Federal Law Claims Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs' Complaint attempts to state the following claims under Federal Law: 1) violation of the Takings Clause; 2) violation of Plaintiffs' substantive due process rights; 3) violation of Plaintiffs' procedural due process rights; 4) violation of Plaintiffs' rights to equal protection under the law; and 5) violation of Plaintiffs' rights to equal privileges and immunities under the law. Plaintiffs' claim that these deprivations of constitutional rights entitle Plaintiffs to damages under 42 U.S.C. §1983, as well as 42 U.S.C. §1985, and 42 U.S.C. §1988.

A local government, and its officials, can be sued directly under 42 U.S.C. §1983 if it implements or executes a policy statement, ordinance, regulation, or decision that violates an individual's constitutional right.  *See Nelson v. Campbell*, 541 U.S. 637 (2004).

The immediate problem with the plaintiffs' §1983 action is there is no underlying constitutional violation to support it. The Supreme Court has held that the threshold requirement of this statute relates to "whether the plaintiff has been deprived of a right secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137 (1979). Unless a deprivation of some federal constitutional or statutory right has occurred, §1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate. *Id.* Here, none of the constitutional violations alleged in Plaintiffs' Complaint will survive a motion to dismiss. Without a constitutional violation, there can be no recovery under §1983. *Id.* For the reasons stated below, each of the Plaintiffs' federal claims should be dismissed as a matter of law.

     **1.      Takings Clause.**

Plaintiffs' Complaint alleges that "[u]pon original application to the City of Tontitown for building permits, development approval was made conditional upon the uncompensated dedication of a right of way easement to the City of Tontitown that did not serve any public purpose related to the application for the permits." Complaint ¶ 54. The Complaint goes on to allege that, "[t]he defendants' individual and corporate actions have resulted in an unreasonable delay depriving Potter of any viable economic use of his property, and constitute a temporary taking without just compensation, depriving Potter of his Fifth Amendment substantive right to be free from uncompensated takings." Complaint ¶ 58 (emphasis added).

The Takings Clause of the Fifth Amendment – made applicable to the States through the Fourteenth – provides that private property shall not be taken for public use, without just compensation. The Supreme Court has recognized that government regulation of private property

may, in some instances, be so burdensome that its effect is equivalent to a direct appropriation or ouster – and that such "regulatory takings" may be compensable under the Fifth Amendment. *See Penn. Coal Co. v. Mahon*, 260 U.S. 393 (1922). As its text makes plain, the Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987).

However, it has long been the law that a property owner may not assert a §1983 action for uncompensated taking until he or she has sought compensation in the available state venue and been denied. In *Roy v. City of Little Rock*, 902 F. Supp. 871 (D. Ark. 1995), the district court for the Eastern District of Arkansas recognized that the Takings Clause does not require that compensation be paid either in advance or contemporaneously with the taking. *Roy,* 902 F. Supp. at 876. Instead, the Takings Clause is satisfied provided that a "reasonable, certain and adequate provision for obtaining compensation" is available to the landowner at the time of the taking. *Roy*, *supra* (*citing Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-25 (1974)). At issue in *Roy* was whether a plaintiff could seek damages for an alleged regulatory taking under §1983 without first availing itself of Arkansas' state court process for awarding just compensation for such taking. Ultimately, the *Roy* court held that "if a State provides an adequate procedure for seeking just compensation, the property owners cannot claim a violation of the Just Compensation Clause under §1983 until they have used the procedure and been denied just compensation." *Id* 902 F. Supp. at 877 (*citing Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)). Having examined Arkansas' procedures and determined them to be adequate, the court stated: "Therefore, since plaintiffs have failed to avail themselves of the measures

5

for obtaining compensation for any such 'temporary taking' afforded by Arkansas law, their takings claim brought under §1983 is premature and must be dismissed." *Id.*

Like its federal counterpart, the Arkansas Constitution prohibits the taking of private property for public use without just compensation[1], and Arkansas has, by statute, authorized a cause of action allowing property owners to obtain compensation for any property so taken. *See* Ark. Code Ann. § 18-15-102; Ark. Code Ann. §§ 18-15-304 to 308.  It is clear that Arkansas recognizes a cause of action requiring just compensation to be paid for any "temporary taking" of private property by the state or its political subdivisions. *Roy*, *supra*; *City of Fayetteville v. Stanberry*, 305 Ark. 210, 214-17, 807 S.W.2d 26, 28-29 (1991).  Arkansas' procedure has already been determined to be adequate thereby preventing a claim for just compensation under §1983 until Plaintiffs have used the procedure and been denied just compensation. *See Roy, supra.*

In the present case, Potter does not, and cannot, allege that he has sought and been denied compensation for the City's alleged regulatory or "temporary taking" of his property.  Put another way, Potter has failed to avail himself of the measures for obtaining compensation for any such "temporary taking" afforded by Arkansas law. As a result, Potter's takings claim brought under § 1983 is not ripe for federal court review and must be dismissed. *Roy*, *supra*; *See also MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 350, 91 L. Ed. 2d 285, 106 S. Ct. 2561 (1986) (holding that a court cannot determine if a state has failed to provide just compensation until it knows what compensation the state intends to provide); *Collier v. City of Springdale*, 733 F.2d 1311, 1316-17 (8th Cir. 1984); *Light v. Blackwell*, 472 F. Supp. 333, 336-39 (E.D. Ark. 1979), *aff'd*, 620 F.2d 307 (8th Cir. 1980).

---

[1] Ark. Const. Art. 2, § 22 (1874); *see Robinson v. City of Ashdown*, 301 Ark. 226, 229-32, 783 S.W.2d 53, 55-56 (1990).

6

2.       **Substantive Due Process**

Paragraphs 54 through 57 of the Complaint attempt to allege a violation of Plaintiffs' substantive due process rights.  This argument can also be quickly dismissed because it is not an appropriate cause of action to attack the alleged regulatory taking of a property.

In some instances, a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of substantive due process.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  However, the Supreme Court has repeatedly held that where "a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Id*. at 842; *United States v. Lanier*, 520 U.S. 259, 272 (1997); *Allbright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Here, the Fifth Amendment – specifically, the Takings Clause of the Fifth Amendment – provides the explicit textual source for the plaintiffs' claim.

The Supreme Court has specifically stated that a substantive due process test is not a valid method of discerning whether private property has been "taken" for purposes of the Fifth Amendment.  *See Lingle v. Chevron, U.S.A. Inc.*, 544 U.S. 528, 542 (2005); *see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 200 (2003) (J. Scalia *concurring*).

In *Chesterfield Dev. Corp. v. Chesterfield*, 963 F.2d 1102 (1992), the Eighth Circuit agreed with this reasoning and opined that a federal court is not the proper venue to determine local land disputes.  "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases.  We see no reason not to apply these holdings to a land-use dispute." *Chesterfield*, 963 F.2d at 1105 (*citing Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir. 1989)),

In *Chesterfield*, a developer filed an action against the Chesterfield City Council claiming, among other things, a violation of his substantive due process rights. The allegations claimed that the council enforced an invalid zoning plan and ordinance against the developer. The *Chesterfield* court affirmed the dismissal of the developer's suit for failure to state a claim and stated the following:

> Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [plaintiff's] characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation. ... This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate. A federal court, after all, "should not ... sit as a zoning board of appeals."

> Every appeal by a disappointed developer from an adverse ruling by a local planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

*Chesterfield*, 963 F.2d at 1104 (citations omitted); *see also N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050 (8th Cir. 2004) (holding that federal courts avoid constitutional issues when resolution of such issues is not necessary for disposition of a case). Based on the reasoning of the Supreme Court and Eighth Circuit, it is clear that Plaintiffs' substantive due process claim should be dismissed.

### 3.    Procedural Due Process

The next allegation in Plaintiff's Complaint states that "[t]he City of Tontitown, the Tontitown Planning Commission, the Tontitown Water and Sewer Commission, and Mick Wagner individually have conspired to deprive Potter of his right to be heard in a meaningful way before a fair and impartial tribunal ... and have worked to deprive Potter of rights secured by the Fourteenth

8

Amendment to the United States Constitution."  Plaintiffs' Complaint ¶¶ 59-60.   It appears that

Plaintiffs are claiming the City of Tontitown has violated their right to procedural due process;

however, they do not articulate any facts in support of this claim.

Plaintiffs' allegations should be dismissed as a matter of law.  As noted in paragraph 46 of

the Complaint, on or about August 2, 2006, Mr. Potter withdrew all applications pending before the

City of Tontitown.  Before his withdrawal, Potter had a statutory right to appeal any decision of

Tontitown or its agencies to the circuit court.  Ark. Code Ann. §14-56-425 states the following:

> In addition to any remedy provided by law, appeals from final action taken by the
> administrative and quasi-judicial agencies concerned in the administration of this
> subchapter may be taken to the circuit court of the appropriate county where they
> shall be tried de novo according to the same procedure which applies to appeals in
> civil actions from decisions of inferior courts, including the right of trial by jury.

Nowhere does Potter allege that he was denied approval or that he availed himself of his right to

appeal any adverse ruling by the City; instead, he alleges only that he was unhappy with the

procedure, determined it did not apply to him and withdrew all applications. Potter's withdrawal

effectively waived his right to procedural due process provided by Ark. Code Ann. §14-56-425. **One

cannot claim a lack of procedural due process when he has not availed himself of existing

procedures**. *Roy*, 902 F. Supp. at 876-77 (emphasis added); *Anderson v. Douglas County*, 4 F.3d

693, 696 (8th Cir. 1993).  Simply put, Plaintiffs  had procedural due process and chose not to pursue

it.

Besides, in such local land regulation disputes, "assuming a landowner has a protectible

property interest, procedural due process is afforded when the landowner has notice of the proposed

government action and an opportunity to be heard" *Id.* at 578 (citing *Littlefield v .City of Afton*, 785

F.2d 596, 603 (8th Cir. 1986).  Plaintiffs' Complaint alleges neither a lack of notice nor lack of an

opportunity to be heard.  To the contrary, Potter alleges to have attended every meeting.  *See* Complaint at ¶ 32.  As a result, this claim should be dismissed as a matter of law.

### 4.      Equal Protection Clause

Plaintiffs' Complaint alleges "the actions of the defendants have resulted in injury to the Plaintiff stemming from a deprivation of equal privileges and immunities under the law motivated by intent to discriminate against Plaintiff as a class of one and as the proprietor of an RV park, where other similarly situated persons have not been subjected to the same requirements."  *See* Plaintiffs' Complaint at ¶ 63.  The Complaint does not allege any facts to support these conclusory allegations.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.  *Id*.  *Stone v. City of Hot Springs*, _____ F.Supp. 2d. _____, 2006 U.S. Dist. LEXIS 31171 (W.D. Ark. 2006).  In order to successfully plead an equal protection claim, a plaintiff must, **at a minimum**, allege facts to support that he or she was treated differently than similarly situated persons at the hands of a government official and that the treatment was tainted by a purposeful intent to discriminate for an invalid reason.  *Id*. (emphasis added).  In order to impose liability against a municipality pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the violation of his constitutional rights was part of a governmental custom, policy, ordinance, regulation or decision.  *Id*.  Failure to include any allegations, reference, or language by which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom renders the complaint deficient.  *Id*.  Identifying the disparity in treatment is especially important in class-of-one cases.  *Barstad v. Murray County,* 420 F. 3d 880, 884 (8th. Cir. 2005).  Plaintiffs must establish that they were 'similarly situated' to other

applicants for the license, permit, or other benefit being sought, particularly **with respect to the same time period**. *Id.* (emphasis added).

In the instant case, Plaintiffs allege they are a class-of-one. To proceed with an equal protection claim, a plaintiff who is not member of suspect class, a class-of-one claimant, can only prevail by showing he or she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Barstad, supra*. The pleading requirement of the Equal Protection Clause requires that a complaint allege sufficient facts to meet the above-mentioned two-pronged test, and mere conclusory allegations are insufficient. *Stone v. City of Hot Springs*, _____ F.Supp. 2d. _____, 2006 U.S. Dist. LEXIS 31171 (W.D. Ark. 2006); and *Chestnut Ridge Associates, LLC v. Village of Chestnut Ridge,* U.S. App. LEXIS 22828 (2nd Cir. 2006) (unpublished opinion) (dismissing complaint due to failure to allege facts showing lack of a rational basis for disparate treatment).

The applicability of Rule 12(b)(6) in a class-of-one claim relating to municipal regulation is well defined by the recent case of *Stone v. City of Hot Springs*, _____ F.Supp. 2d. _____, 2006 U.S. Dist. LEXIS 31171 (W.D. Ark. 2006). In *Stone*, the plaintiff filed an action in the Western District of Arkansas against the City of Hot Springs due to allegations that officials for the City of Hot Springs harassed, ridiculed, and demeaned the plaintiff and had unfairly applied city ordinances to her business in an attempt to force the plaintiff out of business due to the fact that she was engaged to an African-American. Hot Springs filed a motion to dismiss pursuant to 12(b)(6), and the court dismissed the complaint ruling as a matter of law that the plaintiff's complaint contained no allegations from which purposeful intent to discriminate could be derived aside from the plaintiff's conclusory allegations.

11

In *Stone*, the Plaintiff alleged in her complaint that "[o]ther businesses owned by white citizens not engaged to (and in business with) African-Americans have been accused by the City of Hot Springs of being in violation of the same ordinances plaintiff is accused of violating, but those businesses have received preferential treatment and have been allowed to continue business operations." *Id* at *3. The court opined that this statement alone is insufficient to state an equal protection claim.  The court noted that the plaintiff did not allege that the "other businesses" were conducting the same business as Plaintiff, were subject to the same restrictions, laws, ordinances, etc., as Plaintiff that would render them "similarly situated" to plaintiff. *Id*. at*4.  The *Stone* Court further stated that for purposes of an equal protection analysis, the plaintiff must be similarly situated to another group in all relevant aspects for purposes of the challenged government action, and the plaintiff's amended complaint does not reflect the ordinances she or "other businesses" were charged with violating or what kind of action the City of Hot Springs took as a result of the alleged violations.   Consequently, the court concluded that plaintiff's conclusory allegations were insufficient to survive a Motion to Dismiss.  *Id.*

In the instant litigation, Plaintiffs' Complaint asserts only conclusory statements and fails to state any supporting factual allegations.  Most striking, while Plaintiffs allege disparate treatment, Plaintiffs' Complaint fails to identify a single similarly situated business which was treated differently or to describe how such business is similarly situated.  Such an omission is fatal to Plaintiffs' equal protection claim.  *See, Bartstad, supra* (dismissing equal protection claim brought as §1983 action in part because Plaintiff failed to identity any similarly situated business which was treated differently).[2]

---

[2]  It should be noted that there was hostility between the plaintiffs and city officials in *Barstad*. To the point at which one of the plaintiffs made an obscene gesture to one of the named city

Further, Plaintiffs' Complaint fails to allege facts from which it can be inferred that there was no rational basis for the alleged disparate treatment.  While the Complaint does not describe the proposed RV Park, there are certain facts which can be assumed, specifically that the development will support persons staying at the park for varying periods of time in their RV's and that the RV's will use the adjoining streets to access the RV Park.  Plaintiffs allege they were required to provide certain sewer improvements, road improvements and other unidentified improvements.  Complaint at ¶¶ 37-42.  Assuming the allegations of Plaintiffs' Complaint are true, there is a rational basis for the  proposed requirements to handle the sewage needs of the RV Park and to allow the roads to handle RV and related traffic. Consequently, the above-mentioned defendants request that this Court dismiss the Plaintiffs' Equal Protection claim as a matter of law.

### 5.      Privileges and Immunities

As noted, paragraph 63 of Plaintiffs' Complaint alleges that, "[t]he actions of the defendants have resulted in injury to the plaintiff stemming from a deprivation of equal **privileges and immunities** under the law motivated by intent to discriminate against Plaintiff as a class of one and as the proprietor of an RV park, where other similarly situated persons have been subjected to the same requirements."  (Emphasis added).  It is assumed that the plaintiffs are referring to their equal protections claim instead of a claim under the privileges and immunities clauses.  However, if by chance the plaintiffs are making a claim under the privilege and immunities clauses, such a claim is misplaced and should be summarily dismissed.

---

officials and the city official refused to provide the plaintiff a permit until the plaintiff issued an apology. *Id.* 420 F3d at 880-84.  The United Supreme Court has stated that "a tincture of ill will does not invalidate governmental action" *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

There are two privilege and immunities clauses contained in the Constitution, both of which protect citizens from infringement by the state government.  Article IV, Section 2 requires that the citizens of each state receive all the "privileges and immunities" of citizens of other states.  It prohibits any distinctions in law between citizens of a state and citizens of other states if those distinctions are unreasonable.  *See* John Nowak, *Constitutional Law*. p. 371 (6ᵗʰ ed. 2000).  It is immediately clear that this provision does not apply to the facts in this case.  At no time do the Plaintiffs allege any deprivation of rights as compared to citizens of other states.

Similarly, the privileges and immunities clause of Section 1 of the Fourteenth Amendment prohibits the states from making laws which would abridge "the privileges or immunities of citizens of the United States."  U.S. Const. Amend. 14 § 1.  The Supreme Court has held that this clause only protects those rights peculiar to being a citizen of the federal government; i.e. the right to vote in elections, the right to interstate travel or commerce, the right to enter federal lands, or the rights of a citizen while in the custody of federal officers.  Nowak, at 371.  Once again, this constitutional guarantee is not relevant to the facts in this case for obvious reasons.  Overall, Potter has not presented sufficient facts to support a privileges and immunities violation, therefore, this claim should be dismissed.

### 6.     Claim under 42 U.S.C. §1985

Next, Plaintiffs allege that the City of Tontitown has violated 42 U.S.C. §1985 (3),[3] involving conspiracies, which states in pertinent part the following:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such

---

[3]42 U.S.C. §1985 (1) and (2) are not relevant to the facts of this case.

14

conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

To begin with, this Court has recently held that, "the law presumes that municipalities are incapable of entering into conspiracies. Hence, municipalities cannot be liable in actions brought pursuant to Section 1985 to begin with." *See Stone v. City of Hot Springs*, ___ F.Supp. 2d. ___, 2006 U.S. Dist. LEXIS 31171 (D. Ark. 2006) (*citing Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998). Further "conspiracy claims require allegation of specific facts showing meeting of minds, mere allegations of conspiracy without stating sufficient facts about a mutual understanding or meeting of the mind do not state a claim under 42 U.S.C. §1985." *Id. See also Snelling v. Westhoff*, 972 F.2d 199 (8th Cir. 1992). Accordingly, Plaintiffs' §1985 claim should be dismissed.

In the alternative, Plaintiffs' claim still fails as a matter of law. In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court interpreted §1985(3), as follows:

> The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Griffin*, 403 U.S. at 102 (1971). Here, Plaintiffs have failed to meet these requirements. The arguments which defeat Plaintiffs' equal protections claim and their privileges and immunities claim can also be adopted to defeat their claim under 42 U.S.C. §1985.

7.      Claim under 42 U.S.C. §1988

Finally, Plaintiffs' Complaint claims that they are entitled to attorney's fees under 42 U.S.C. §1988, which gives a court the discretion to award reasonable attorney's fees to a plaintiff who prevails under §1983 or §1985. As explained above, Plaintiffs do not have a valid claim under either

15

of these statutes; thus, attorney's fees are not appropriate.

For all these reasons, Plaintiffs' federal law claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C.     Plaintiffs' State Law Claims Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs' Complaint attempts to allege state law claims against Tontitown, Mick Wagner individually, and the Annexors for civil conspiracy and tortious interference with a business expectancy.   Plaintiffs' Complaint also requests declaratory judgment to effectively cancel the annexation election scheduled for November 7, 2006.   For the reasons stated below, each claim should be dismissed as a matter of law.

### 1.     Civil Conspiracy.

Plaintiffs' Complaint attempts to assert a claim against the City of Tontitown, Mick Wagner Individually, and the Annexors for civil conspiracy.   To establish a claim for civil conspiracy, a plaintiff must show that two or more "persons" have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive, or immoral means, to the injury of another. *Faulkner v. Arkansas Children's Hosp*., 347 Ark. 941, 69 S.W.3d 393 (2002). A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Id.* A civil conspiracy is an intentional tort which requires specific intent to accomplish the contemplated wrong. *Id.*  The various departments and officials of a municipality are considered a single person for purposes of a conspiracy and cannot conspire with itself. *Stone, supra.*

In the present case, Plaintiffs' Complaint alleges the purpose of the conspiracy was to block the development of the RV park (¶ 76) and that such a purpose is immoral, oppressive and injurious

16

(¶ 78), but the Complaint fails to allege any facts to support these conclusory allegations.  The Complaint further alleges the "conspirators...have each committed acts in furtherance of. . . the conspiracy" (¶79) and that said acts were committed in an "immoral, oppressive, and injurious manner" (¶ 80), but, again, there are no facts stated to support these conclusions.

The Compliant does not indicate what actions were allegedly "unlawful, immoral or oppressive," and a search of the alleged conduct of each "conspirator" shows there was, in fact, no actionable conspiracy as a matter of law.  Plaintiffs' Complaint makes the following allegations regarding the conduct of the alleged conspirators:

- Mick Wagner, in his personal capacity, stated he would "stop the RV Park" (¶ 45);

- Mr. Wagner, in his personal capacity, met with unidentified persons who were not citizens of Tontitown about annexing into the City in order to impose City regulations on the RV Park "in an attempt to destroy the viability of the project" (¶ 47);

- Some (but not all) of the Annexors appeared before the County Court and stated that they wished to be annexed to prevent the RV Park from being built (¶ 73);

- Mick Wagner,  in his role as Water and Sewer Commission Chairperson, or some other City official, advised Washington County officials that Tontitown would not supply the RV Park with water in an effort to prevent County approval (¶ 50);

- The City's attorney sent a letter, in lieu of a live appearance, to the Washington County Planning Board, which was presented to the board and

17

Plaintiffs at the Board's public meeting, expressing the City's objections to preliminary approval of the RV park (¶¶ 51-52);

• The City did not grant approval of Plaintiffs' request for over six months while it attempted to raise public opposition to the RV Park. (¶ 35).

These allegations are insufficient as a matter of law. *See Southwest Publishing Co. v. Ney*, 227 Ark. 852, 302 S.W.2d 538 (Ark. 1957).

**a. Conspiracy claim against Annexors and Mick Wagner individually.**

Arkansas law provides that, as "free citizens," the Annexors and Mr. Wagner individually, have a right to oppose regulatory approval of a matter, speak against regulatory approval of a matter in a public forum, to publicly oppose the RV park, to solicit other citizens to join in the opposition, and to hire an attorney to lodge a written opposition with the regulatory body. *Southwest Publishing Co. v. Ney*, 227 Ark. 852, 302 S.W.2d 538 (Ark. 1957). The Arkansas Supreme Court has held that such actions cannot support a claim for conspiracy as a matter of law, even when it is alleged the conspirators were motivated by self-interest and the conduct results in injury to another. *See, id.* at 860-63.

In *Southwest Publishing v. Ney*, *supra*, American Television Co. held a permit issued by the Federal Communications Commission for a television station in Ft. Smith, Arkansas. H.S. Nakdimen was the sole shareholder of American, and George Hernreich held an option to buy 50% of the stock of American. *Id.* at 854. American and Hernreich entered into a contract whereby they agreed to assign the FCC permit to Southwest Publishing, subject to the FCC's approval. The contract provided that it would be void if approval was not received by a date certain, unless the parties agreed to an extension. The contract further provided that each party would cooperate in obtaining FCC approval. Jerome M.. Ney opposed the assignment and formed a group called

18

"Citizens Group for Two Television Stations in Fort Smith."

It was alleged that Mr. Ney, with full knowledge and understanding of the agreement, and **for personal gain**, undertook to speak against approval of the assignment before the FCC, made several trips to Washington, D.C. to speak to the FCC, retained an attorney to prepare and file papers before the FCC containing derogatory charges concerning Southwest Publishing, **persuaded by insincere means** various and sundry other persons, including Mr. Hernreich, to join with him in opposing the application, and further undertook to persuade shareholders of American[4] to refuse to grant an extension of time to obtain FCC approval. *Id.* 227 Ark. at 856. The plaintiff alleged the **purpose of all these efforts was to delay FCC approval** long enough that the contract would expire thereby killing the assignment. *Id.* The contract expired without FCC approval, and, thus, the FCC dismissed the application as moot. The plaintiff alleged that, if Ney had not interfered, FCC approval would have been obtained prior to the contract's expiration. *Id.*

The plaintiff filed suit against Ney and others alleging a civil conspiracy. The Arkansas Supreme Court dismissed the complaint as to Ney[5] on demurrer and explained:

> The acts attributed to Ney are legal acts. It was **not unlawful for him to oppose** the granting of the permit -- it was **not unlawful for Ney to get others to join** in the protest -- it was **not unlawful for Ney to employ an attorney to file with the Commission a petition protesting the approval of the assignment**. Though malice is alleged in the complaint ... we are unable to say that the allegations herein meet that requirement. **Not only were the acts of Ney, standing alone, entirely legal, but such acts were in furtherance of a hearing before a public forum**. This conduct is entirely the antithesis of acts generally committed in a plot to injure some individual. Here, there was no "cover up", nor artifice. **Ney proclaimed to the world**

---

[4]Mr. Nakidimin granted one extension and died shortly thereafter. Mr. Ney and Mr. Hernreich were accused of persuading those who received the American stock under Mr. Nakidimen's will to refuse an additional extension. *Ney*, at 854-56.

[5]The Court allowed the claim against Hernreich to go forward, not on a conspiracy claim, but based upon the allegation that the contract required him to cooperate in obtaining FCC approval rather than opposing it. *Ney*, at 855-58.

19

**that he was against the assignment of the contract.** ...

We will not say that a conspiracy, which is to culminate in the commission of an unlawful act, cannot be reached by a series of acts, in themselves lawful, but we do say that the acts alleged here against Ney in furtherance of the alleged conspiracy, do not constitute such as to allege a cause of action.

Civic minded citizens may well petition and appear before tribunals to protest the granting of radio or television permits, the elimination of air, railway, or bus services, the increase of rates by public utilities, and similar instances too numerous to mention. They may well appear before Congressional and Legislative Committees to voice their opposition to legislation desired by some individual, corporation, or business establishment. **We do not desire to establish a rule in this state which would discourage individuals from exercising their privileges as free citizens. As stated by the trial court in its opinion: "The constitutional guarantees of liberty of opinion and freedom of speech would soon be impaired if citizens exercising those rights were to be compelled to defend their actions in expensive litigation, instituted by persons who resented and characterized the exercise of such rights as interference in their private affairs."** Concluding, when the words "maliciously" and "unlawfully" are removed, the complaint fails to state a cause of action against Ney, and those words, standing alone, do not supply the deficiency. The action of the court in sustaining Ney's demurrer was entirely proper.

*Ney,* 227 Ark. at 860-63, 302 S.W.2d at 542-44 (emphasis added).

Likewise, Arkansas law provides the Annexors with a statutory right to seek annexation. Ark. Code Ann. 14-40-601 et. seq. The same statutes require a hearing before the County Court and provide Plaintiffs, Defendants and all other interested parties with the right to appear before the County Court and state their support or opposition to the annexation. *Id. Ney, supra,* makes clear the Annexors and Mr. Wagner, as free citizens, have the right to petition for annexation, to organize a group for that purpose, to solicit others to support the annexation, and to discuss the same with others. *Ney* also makes clear that these defendants have the right to oppose regulatory approval of the RV Park, to "proclaim to the world" their opposition, and even to seek to delay approval. Allegations of malice or self-interest do not invalidate this right. *See, id.* (wherein Plaintiff alleged Defendants acted "mailiciously" and "unlawfully" motivated by self-interest).

As stated by the Court in *Ney,* the exercise of those rights cannot support a claim for civil conspiracy simply because the Plaintiffs "resent and characterize the exercise of those rights as interference in their private affairs." *Ney*, 227 Ark. at 863.   Thus, the civil conspiracy claim against the Annexors and Mr. Wagner individually should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

      **b.**     **State law claims against the City of Tontitown**.

The state law claim against Tontitown for civil conspiracy should likewise be dismissed for two reasons.  First, a municipality cannot conspire with itself. *Stone, supra; Barstad, supra*. Because the claim against the Annexors and Mr. Wagner individually must be dismissed, there is no remaining claim that the City conspired with another party. Second, the alleged conduct on the part of the City is not "unlawful, immoral or oppressive."  Plaintiffs allege that their property lies outside the city limits of Tontitown.  Plaintiffs' Complaint at ¶ 24.  Arkansas Code Annotated § 14-234-111(a) provides that a municipal owned waterworks "may," but is not required to, extend water service to users outside the City's corporate limits.  Thus, stating to Washington County officials that Tontitown would not provide water service to Plaintiffs' RV park lying outside the city limits is not "unlawful, immoral or oppressive."  Further, the allegation that the City did not rule on Plaintiffs' pending application for a period of six months does not allege an act sufficient to constitute a conspiracy. *See Ney, supra* (holding allegation that party attempted to delay regulatory consideration of application in order to prevent the viability of the proposed project insufficient to allege cause of action for conspiracy).  Thus, the civil conspiracy claim against Tontitown should likewise be dismissed.

    **2.  Tortious Interference with Business Expectancy**

Plaintiffs have asserted a claim for tortious interference with a business expectancy against

the Annexors, Mick Wagner individually and Tontitown.  In order for Plaintiffs to establish a claim for tortious interference with a business expectancy he must allege facts to support all of the following: (1) existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party or parties; (3) intentional interference inducing or causing breach of or termination of the relationship or expectancy; and (4) resultant damage.  *Stewart Title Guaranty Company v. American Abstract & Title Company*, No. 04-789, ____ Ark. ____, ____ S.W.3d ____,  2005 Ark. LEXIS 610, at *9 (Ark. Oct. 13, 2005) (Citing *Vowell v. Fairfield Bay Community Club, Inc.*, 346 Ark. 270, 276-77, 58 S.W.3d 324, 329 (2001)).  Under Arkansas law, for a defendant's actions to constitute tortious interference with a business expectancy not only must the above four factors be established, but the defendant's conduct must also be "improper."  *Stewart Title*, 2005 Ark. LEXIS 610, at *9 (citing *Hunt v. Riley*, 322 Ark. 453, 909 S.W.2d 329 (1995))

In the instant case, Plaintiffs' Complaint fails to state a cause of action in at least three respects.  First, the alleged interference is not "improper" as a matter of law.  Plaintiffs' Complaint does not indicate what conduct constitutes improper interference, but it is presumed the conduct is the same as discussed above with regards to the civil conspiracy claims.   For the same reasons the alleged conduct was not "unlawful, immoral or oppressive" for purposes of the conspiracy claim, the alleged conduct cannot be deemed "improper" for purposes of tortious interference with a business expectancy.  *See, Ney, supra* (holding that opponent's conduct of opposing regulatory approval, forming citizen group to oppose regulatory approval, engaging attorney to file pleadings opposing approval, and persuading stockholders in corporation to refuse to grant contract extension to obtain approval did not amount to actionable interference with Plaintiff's contract rights).

Second, Plaintiffs do not allege to have ***lost*** their expectancy resulting in damages.  Arkansas

22

law specifically requires a "***loss of*** the expectancy and resulting damages." *Windsong Enterprises, Inc., v. Upton*, No. 05-616, ____ Ark. ____, ____ S.W.3d ____, 2006 Ark. LEXIS 208 at *10 (March 23, 2006) (emphasis added); *Stuart Title, supra*; *Donathon v. McDill*, 304 Ark. 242, 800 S.W.2d 433 (1990) (emphasis added).  Plaintiffs' Complaint never alleges a loss of its expectancy (i.e. the RV Park), only a "disruption" of the expectancy.  Plaintiffs' Complaint at ¶¶ 69, 74. Arkansas law requires a loss or termination of the expectancy in order to amount to an actionable tort.  This distinction is important, especially given the contingencies discussed below.

Third, Plaintiffs' Complaint does not allege a valid business expectancy because it is subject to contingencies.  Arkansas law provides that "an expectancy subject to a contingency, which occurred, is not tortious interference with business expectancy." *Windsong,* 2006 Ark. LEXIS 208 at *10; *Donathon*, 304 Ark. at 244.  This is true even if the alleged interference caused the contingency to occur and was motivated by self-interest. *Id.*

In *Windsong*, Windsong acquired property in Eden Isle Subdivision which was subject to a bill of assurances.  At the time Windsong acquired the property, his  intended use of the property (to build condominiums) did not violate the bill of assurances; however, the other property owners did not want condominiums in the neighborhood and, in order to prevent the condominiums, amended the bill of assurances to prohibit such use.  The Court ruled that since the property was subject to the bill of assurances, and because the bill of assurances was subject to amendment, Windsong's business expectancy was at all times subject to the contingency that the bill of assurances could be changed to prohibit condominiums.  Thus, as a matter of law, such amendment was not tortious interference with Windsong's business expectancy.

Similarly, in *Donathon v. McDill, supra* Donathon hired a title company to research the title to a parcel of land he wished to buy.  The title company advised that the land was soon to be sold

for nonpayment of taxes.  Donathon and McDill, the title company's president, went to the foreclosure sale and each bid on the property.  Donathon's bid was accepted.  Following the sale, McDill approached the landowner and advised him of his right to redeem, which the landowner did.  McDill then negotiated the purchase of the property from the landowner.  Donathon sued for interference with business expectancy.  The Arkansas Supreme Court ruled that Donathon's expectancy was at all times subject to the continency of the landowner's statutory right to redeem.  Even though McDill assisted the landowner in redeeming the property for the purpose of undoing Donathon's purchase and acquiring the property himself, the landowner had a statutory right to redeem, thus, no tort was committed.

In the instant case, Plaintiffs' Complaint contains the conclusory assertion that its expectancy "was not subject to any contingency that defendants could bring about with any basis in law."  Complaint at ¶ 67.  However, the actual facts alleged by the Complaint demonstrate contingencies, specifically regulatory control and required approval by Tontitown and/or Washington County as well as potential annexation of the property.

Plaintiffs' Complaint alleges:

- that the property lies within Tontitown's planning area. (¶ 24);

- that, while the property was under contract, Plaintiffs learned they would need regulatory approval from Tontitown to construct the RV Park, and they submitted an application for a permit to build the project (¶¶ 21-23);

- that, without at least conditional approval, they were unable to do any work on the project.  (¶ 34);

- that Plaintiffs needed a variance to build the RV Park, but the conditions attached to the granting of the variance would prevent the viability of the project (¶¶ 37-44);

- that they withdrew their application before Tontitown and sought regulatory approval from Washington County ( ¶¶ 46-47, 50-52).

All of these allegations make clear that the business expectancy (the RV Park) was contingent upon regulatory approval by Tontitown and/or Washington County.  In fact, the alleged interference is precisely either efforts to oppose, frustrate or outright prevent regulatory approval by Tontitown and the Washington County Planning Board.

Similarly, the Complaint alleges that the Annexors, after speaking with Mr. Wagner, attempted to annex property, including Plaintiffs' property, into Tontitown.  The alleged purpose of the annexation was that, once annexed, the RV Park would be subject to more stringent regulations which would "destroy the viability of the project."  Complaint at ¶¶ 47, 74.  Again, Plaintiffs' own Complaint confirms the business expectancy was subject to the statutory rights of the surrounding property owners to seek annexation.  Thus, just as in *Windsong* and *Donathon*, Plaintiffs' expectancy was at all times, and still is, subject to the statutory right of the others to seek annexation and subject to the regulatory approval of Tontitown and/or Washington County.  To this day, Plaintiffs do not know whether these contingencies will prevent the RV Park from becoming a reality.  As such, as a matter of law, Defendants' alleged conduct be considered tortious interference with Plaintiffs' business expectancy.

### 3.  Claim for Declaratory Judgment to stop the annexation election.

Plaintiffs' Complaint also seeks declaratory judgment to prevent the Washington County Election Commission from counting the votes in the upcoming annexation election.  Complaint at ¶¶ 82-98.   This Court should apply a *Burford* abstention and abstain from considering Plaintiffs attack against the annexation election.

Federal Courts have routinely applied *Burford*-type abstentions to abstain from considering

25

state or local land use and annexation issues.  "Land use questions are the peculiar concern of local and state governments, and traditionally, federal courts have not interfered with state courts in the area of land use policy." *Trinity Baptist Church, Inc. v. The City of Asheville*, 88 F. Supp. 2d 487, 491 (W.D. N.C. 1999)(quoting *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943))  Thus, federal courts should abstain where a state adjudication might avoid: (1) the necessity of a decision on the federal constitutional questions presented; and (2) needless friction in federal-state relations over the administration of purely state affairs.  *Id.*

"Virtually all [cases involving state or local land use laws], **when stripped of the cloak of their federal constitutional claims, are state law cases**.  The federal claims are really state law claims **because it is either the zoning or land use decisions**, decisional processes, or laws that are the bases for the plaintiffs' federal claims." *Trinity Baptist Church, Inc. v. The City of Asheville*, 88 F. Supp. 2d 487, 491 (W.D. N.C. 1999)(quoting *Pomponio v. Fauquier County Bd. Of Sup'rs*, 21 F. 3d. 1319, 1326 (1994)(emphasis added).

Under the doctrine of *Burford* abstention, and its progeny, "a federal court sitting in equity must decline to interfere with the proceedings" if the same would be disruptive of state or local efforts to establish a "coherent policy with respect to a matter of substantial public concern."  *New Orleans Public Service, Inc. v. City of New Orleans*, 491 U.S. 350, 361 (1989); *see also Graham v. County of Albemarle*, 826 F. Supp. 167 (1993) (abstention was proper under the *Burford* doctrine because the matter could be disposed of by resolving the state law questions without the need for adjudicating federal constitutional issues).

"Annexation of property by a city or town is purely a state political matter entirely within the power of the state legislature to regulate." *Campbell v. Sales Tax Dist. # 3*, 673 F. Supp. 790, 796 (E.D. L.A. 1987).  A *Burford*-type abstention appears appropriate with regard to claims resulting

from annexation because such claims involve state and local laws, creating an unwarranted intrusion into purely local concerns, and federal courts should not interfere in administration of affairs of a state or its political subdivision. *Id.*

In *Trinity Baptist Church, Inc.*, the plaintiff filed suit against the defendant city based upon 42 U.S.C. §1983 seeking a declaration that a local zoning ordinance was unconstitutional and an order enjoining the enforcement of said ordinance. The plaintiffs also argued that the city unlawfully delayed the plaintiff's ability to receive permits. The court opined that, "cases involving questions of state and local land use and zoning law are a **classic example** of situations in which the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Id*. The court further stated that it could "conceive of few matters of public concern more substantial than zoning and land use laws." The court concluded that it is obvious that in "most of these cases requiring *Burford* abstention, the federal claim cannot be untangled from the state or local zoning or land use law." *Id*. Therefore, the court ruled "that in the usual case federal courts should not leave their indelible print on local and state land use and zoning law by entertaining these cases." *Id*.

In the instant matter, Plaintiffs are requesting this Court to become involved in the application of state law to a local annexation election. Federal Courts have routinely refused to exercise their jurisdiction over such matters. Tontitown respectfully submits this Court should abstain from issuing declaratory judgment regarding the election. Also, as an alternative argument, the Court could apply a *Buford* abstention to all of Plaintiffs' claims.

## IV.   CONCLUSION

At a minimum, the Court should dismiss all claims against the Annexors and Mick Wagner individually. As stated eloquently by the Court in *Ney*, these defendants did nothing more than

exercise their rights as free citizens, and the same  should not subject them to expensive litigation just because Plaintiffs resent and characterize the exercise of such rights as interference in their private affairs.

None of the constitutional violations alleged in the Plaintiffs' Complaint should survive a 12(b)(6) challenge.  As a result, the Plaintiffs' claims for damages under 42 U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1988 must also be dismissed. Next, the Plaintiffs have failed to set forth an actionable claim based on civil conspiracy and tortious interference.  Finally – in the alternative – the underlying allegations contained in the Complaint involve matters of state law; thus, this court should abstain from considering them in the present action. Overall, the Plaintiffs' Complaint should be dismissed, in its entirety, pursuant to Federal Rule of Civil Procedure 12 (b)(6).

Respectfully Submitted,

CITY OF TONTITOWN, TONTITOWN PLANNING COMMISSION AND TONTITOWN WATER AND SEWER COMMISSION


By: /s/ Mark W. Dossett
                Mark W. Dossett         #95174
                J.R. Carroll           #2003-149
                Jeff Fletcher          #2005-129
                DAVIS, WRIGHT, CLARK,
                    BUTT & CARITHERS, PLC
                P.O. Box 1688
                Fayetteville, AR 72702
                (479) 521-7600
                mdossett@daviswrightlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Mr. George Butler; Mr. Westbrook Doss.

By: /s/   Mark W. Dossett
        Mark W. Dossett            #95174
        J.R. Carroll                #2003-149
        Jeff Fletcher               # 2005-129
        DAVIS, WRIGHT, CLARK,
                BUTT & CARITHERS, PLC
        P.O. Box 1688
        Fayetteville, AR 72702
        (479) 521-7600
        mdossett@daviswrightlaw.com