## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## <u>FAYETTEVILLE DIVISION</u>

**JAY AND CONNIE POTTER and**
**AMERICAN RV PARK, INC.**                                              **PLAINTIFFS**

       **vs.**                         **Case No. 06-5194**

**CITY OF TONTITOWN,**
**TONTITOWN PLANNING COMMISSION,**
**TONTITOWN WATER AND SEWER COMMISSION,**
**WASHINGTON COUNTY ELECTION COMMISSION,**
**JOHN DOES**
**and;**
**MICK WAGNER**                                                      **DEFENDANTS**

## BRIEF IN SUPPORT OF SEPARATE DEFENDANTS'
## <u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

### I. BACKGROUND

On April 10, 2007, the Honorable Judge Kim Smith entered an Order in the Washington

County Circuit Court which declared the following

1. On or about December 22, 2006, this Court entered a Temporary Injunction restraining further development of Plaintiff's RV Park. Since that time, Plaintiffs' property which is the subject of this suit has been annexed into the City of Tontitown. **As a result of the annexation, the property is subject to the jurisdiction of Tontitown, and, by virtue of that fact, Tontitown has jurisdiction over the RV Park project**.

2. The Preliminary LSD Approval granted by the Washington County Planning Board on or about October 6, 2006, provided:

    > "City of Tontitown's jurisdiction for this project is currently under debate. If Tontitown is found to have jurisdiction over this project all County approvals shall be null and void."

    Thus, pursuant to the Court's ruling herein, **all County approvals related to the subject property and project, including the Preliminary LSD Approval granted by the Washington County Planning Board on or about October 6, 2006, are declared null and void**.

1

3.      The preliminary injunction entered by this Court on or about December 22, 2006, is hereby made permanent. **Plaintiffs are hereby permanently enjoined from conducting any construction or improvements to the subject property or the proposed RV Park under any authority provided by the County**, including the preliminary approval granted by the Washington County Planning Board on or about October 6, 2006.

(Emphasis added). *See Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that district courts may consider public records from other proceedings in ruling on a motion to dismiss).

On May 3, 2007, this court entered an Order calling for Potter to file an Amended Complaint reflecting any impact the state-court ruling had on his claims and/or requests for relief. *See* Court Order, ¶ 6. In response, on May 17, 2007, Potter filed a Second Amended Complaint contending that the state court's ruling "has no effect on the Federal Complaint." *See* Second Amended Complaint, ¶ 135. Further, Potter has used his Second Amended Complaint to set forth additional allegations against the Defendants. As a result of Potter's Second Amended Complaint, Tontitown now submits its Brief in Support of Motion to Dismiss.

## II. INTRODUCTION

Potter's Second Amended Complaint seeks damages pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1988 based on the following constitutional claims: violation of substantive due process, violation of procedural due process, unconstitutional taking, and violation and equal protections of the law. In addition, Potter has also asserted state law claims for breach of contract, promissory estoppel, and tortious interference. All of these claims should be dismissed as a matter of law.

### III.  LAW AND ARGUMENT

### A.     Standard of Review

In ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff and accepts the allegations in the complaint as true.  *Stone v. City of Hot Springs*, ___ F.Supp. 2d. ___, 2006 U.S. Dist. LEXIS 31171 (W.D. Ark. 2006) (granting defendant municipalities' motion to dismiss with regard to plaintiff's 42 U.S.C. §§ 1983 and 1985 claims resulting from municipalities regulatory efforts).  While the factual allegations of the Complaint are assumed true, mere conclusory allegations without supporting facts are insufficient to avoid dismissal.  *Id.*

### B.     Res Judicata and Collateral Estoppel

Contrary to Potters' assertions, the state court ruling has significant effects on the present litigation based on the doctrines of *res judicata* and collateral estoppel.

Under the doctrine of *res judicata* a party is precluded from re-litigating an issue that has already been decided or could have been decided in previous litigation.  *McAdams v. McAdams*, 357 Ark. 591, 184 S.W.3d 24 (2004).  Moreover, where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies.  *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 101 S.W.3d 211 (2003).  Finally, the underlying policy of *res judicata* is to prevent parties from re-litigating issues or raising new issues when they have already been given a fair trial.  *McAdams*, *supra*.

The Arkansas Supreme Court has recognized that identical cases between the same parties may be pending in a federal court and a state court at the same time.  *See National Bank of Commerce v. Dow Cheical Co.*, 338 Ark. 752, 1 S.W.3d 443 (1999); *Carter v. Owens-Illinois, Inc.*,

261 Ark. 728, 551 S.W.2d 209 (1977). However, **the "first forum to dispose of the case" enters "a judgment that is binding on the parties."** *Id*. (emphasis added) (holding that the federal district court's grant of summary judgment in favor of the defendants bars relitigation in the state trial court.)

More narrow than *res judicata* is the concept of collateral estoppel. Collateral estoppel, or issue preclusion, bars the re-litigation of issues. *Crockett & Brown v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993). When an issue of ultimate fact has once been determined by a valid and final judgment, collateral estoppel precludes re-litigation of that issue between the same parties in any future proceeding. *Barclay v. Waters*, 357 Ark. 386, 182 S.W.3d 91 (2004). In order to establish collateral estoppel, proof of the following is required: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the determination must have been essential to the judgment. *Id*.

Applying the Arkansas Supreme Court's reasoning in *Dow Chemical* and *Carter*, along with the doctrine of *res judicata* and collateral estoppel, the following issues are barred from consideration in the present case

> Potter's preliminary plat approval from the Washington County Planning Board is null and void;

> Potter's property was, at all times, subject to Tontitown's territorial jurisdiction;

> Potter's property is now within the city limits of Tontitown and is subject to its jurisdiction;

> Potter does not have a vested right sufficient to prevent the application of Tontitown's jurisdiction requirements over his property;

> Potter is permanently enjoined from construction under the approval from the Washington County Planning Board

As more specifically argued below, re-litigation of these issues is barred by the doctrines of *res judicata* and collateral estoppel, many of the claims raised in Potter's Second Amended Complaint should be dismissed as a matter of law.

### C.    Potter's Federal Law Claims Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1.    Substantive Due Process

In his first cause of action, Potter claims that the Defendants have violated his substantive due process rights. A closer look at the allegations reveals that Potter's substantive due process claim is actually a claim for compensation based on Tontitown's alleged regulatory taking. Specifically, Potter alleges the following:

> 150.   **By taking Potter's property rights, Tontitown violated Potter's right to substantive due process** under the Fourteenth Amendment of the Constitution of the United States.
>
> 151.   Upon original application to the City of Tontitown for building permits, development approval was made conditional upon the uncompensated dedication of a right of way easement to Tontitown that did not serve any public purpose related to the application for the permits.
>
> 152.   There is no essential nexus connecting the required dedication of the right of way easement with the impact of development on Potter's Field, and if such nexus exists, the degree of connection between Tontitown's exactions and the impact of development is extremely slight.

(¶¶ 150-152) (emphasis added). Overall, Potter alleges that Tontitown's regulatory efforts have deprived him of his property rights which, in essence, is a regulatory taking claim. As explained in detail below, the Supreme Court has specifically stated that a substantive due process test is not a valid method of discerning whether private property has been "taken" for purposes of the Fifth Amendment. *See Lingle v. Chevron, U.S.A. Inc.*, 544 U.S. 528, 542 (2005); *see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 200 (2003) (J. Scalia

*concurring*).  For this reason, Potter's substantive due process claim must be dismissed as a matter of law.

To begin with, the United States Supreme Court has held that, in some instances, a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of substantive due process.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). However, the Court has repeatedly held that where "a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Id*. at 842; *United States v. Lanier*, 520 U.S. 259, 272 (1997); *Allbright v. Oliver*, 510 U.S.266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Here, the Fifth Amendment – specifically, the Takings Clause of the Fifth Amendment – provides the explicit textual source for Potter's claim.

In *Chesterfield Dev. Corp. v. Chesterfield*, 963 F.2d 1102 (1992), the Eighth Circuit agreed with this reasoning and opined that a federal court is not the proper venue to determine local land disputes.  "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases.  We see no reason not to apply these holdings to a land-use dispute." *Chesterfield*, 963 F.2d at 1105 (*citing Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir. 1989)).

In *Chesterfield*, a developer filed an action against the Chesterfield City Council claiming, among other things, a violation of his substantive due process rights.  The allegations claimed that the council enforced an invalid zoning plan and ordinance against the developer.  The *Chesterfield* court affirmed the dismissal of the developer's suit for failure to state a claim and stated the following:

> Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [plaintiff's] characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation. ... This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate. A federal court, after all, "should not ... sit as a zoning board of appeals."
>
> Every appeal by a disappointed developer from an adverse ruling by a local planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

*Chesterfield*, 963 F.2d at 1104 (citations omitted); *see also N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050 (8th Cir. 2004) (holding that federal courts avoid constitutional issues when resolution of such issues is not necessary for disposition of a case).

Potter's substantive due process claim is nothing more than his regulatory taking claim restated. According to overwhelming authority from both the Supreme Court and the Eighth Circuit, Potter's substantive due process claim should be dismissed as a matter of law.

### 2.    Taking

The Takings Clause of the Fifth Amendment – made applicable to the States through the Fourteenth – provides that private property shall not be taken for public use, without just compensation. The Supreme Court has recognized that government regulation of private property may, in some instances, be so burdensome that its effect is equivalent to a direct appropriation or ouster, and that such "regulatory takings" may be compensable under the Fifth Amendment. *See Penn. Coal Co. v. Mahon*, 260 U.S. 393 (1922).

Here, Potter alleges that Tontitown's actions amount to two separate regulatory takings. Specifically, Potter alleges the following:

166.    The defendants' individual and corporate actions have resulted in an unreasonable delay depriving Potter of any and all viable economic use of his property and constitute a temporary taking without just compensation, depriving Potter of his Fifth Amendment right to be free from uncompensated takings.

* * * * *

176.    The granting of a right of way for the extension of Kelly road does not further a legitimate governmental interest other than stop the RV Park and advance the personal interest of Mick Wagner and/or other citizens and non-citizens of Tontitown.

(¶¶ 166, 176).  As discussed more fully below, both of these claims should be dismissed based on Potter's failure to exhaust his state remedies.

It has long been the law that a property owner may not assert a §1983 action for uncompensated taking until he or she has sought compensation in the available state venue and been denied.  In *Roy v. City of Little Rock*, 902 F. Supp. 871 (D. Ark. 1995), the district court for the Eastern District of Arkansas recognized that the Takings Clause does not require that compensation be paid either in advance or contemporaneously with the taking.  *Roy,* 902 F. Supp. at 876.  Instead, the Takings Clause is satisfied when a "reasonable, certain and adequate provision for obtaining compensation" is available to the landowner at the time of the taking. *Roy*, *supra* (*citing Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-25 (1974)).

Like this case, the plaintiffs in *Roy* sought damages under 42 U.S.C. §1983[1] for an alleged regulatory taking without first availing themselves of Arkansas' state court procedures. The *Roy* court recognized that "if a State provides an adequate procedure for seeking just compensation, the property owners cannot claim a violation of the Just Compensation Clause under §1983 until they

_____

[1]  Potter's Second Amended Complaint alleges damages as a result of **28** U.S.C. §§ 1983, 1985, and 1988.  (¶ 188).  Tontitown presumes that Potter intended to pray for damages pursuant to **42** U.S.C. §§ 1983, 1985, and 1988 and will tailor its arguments accordingly.

have used the procedure and been denied just compensation." *Id.*, 902 F. Supp. at 877 (*citing Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)). The court then examined Arkansas' procedures and determined that they were, indeed, adequate.[2] Ultimately, the *Roy* court held that "[the] plaintiffs have failed to avail themselves of the measures for obtaining compensation for any such 'temporary taking' afforded by Arkansas law, [thus], their takings claim brought under §1983 is premature and must be dismissed." *Id.*

In the present case, Potter does not, and cannot, allege that he has sought and been denied compensation for the City's alleged regulatory or "temporary taking" of his property. Put another way, Potter has failed to avail himself of the measures for obtaining compensation for any such "temporary taking" afforded by Arkansas law. As a result, Potter's takings claim brought under § 1983 is not ripe for federal court review and must be dismissed. *Roy*, *supra*; *See also MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 350 (1986) (holding that a court cannot determine if a state has failed to provide just compensation until it knows what compensation the state intends to provide); *Ingram v. City of Pine Bluff*, 355 Ark. 129, 133 S.W.3d 382 (2003) (holding that a property owner has not suffered a violation of the just compensation clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation.); *Williamson County Regional Planning Commission*

---

[2] Like its federal counterpart, the Arkansas Constitution prohibits the taking of private property for public use without just compensation. Ark. Const. Art. 2, § 22 (1874); *see Robinson v. City of Ashdown*, 301 Ark. 226, 229-32, 783 S.W.2d 53, 55-56 (1990). Further, Arkansas has, by statute, authorized a cause of action allowing property owners to obtain compensation for any property so taken. *See* Ark. Code Ann. § 18-15-102; Ark. Code Ann. §§ 18-15-304 to 308. Overall, it is clear that Arkansas recognizes a cause of action requiring just compensation to be paid for any "temporary taking" of private property by the state or its political subdivisions. *Roy*, *supra*; *City of Fayetteville v. Stanberry*, 305 Ark. 210, 214-17, 807 S.W.2d 26, 28-29 (1991).

*v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985); (holding that federal courts are barred from considering the merits of a takings claim until a private litigant exhausts state remedies); *Collier v. City of Springdale*, 733 F.2d 1311, 1316-17 (8th Cir. 1984); *Light v. Blackwell*, 472 F. Supp. 333, 336-39 (E.D. Ark. 1979), *aff'd*, 620 F.2d 307 (8th Cir. 1980).

### 3.    Procedural Due Process

Third, contrary to Potter's previous two Complaints, the procedural due process claim contained in his Second Amended Complaint is limited to the alleged revocation of a plumbing permit.  Specifically, Potter alleges that, "Tontitown suddenly, and without cause, revoked the plumbing permit (not once, but twice) and/or other property interests without giving notice or an opportunity to be heard."  (¶ 159).  Once again, this claim can be quickly dismissed.

In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of an **opportunity**, granted at a meaningful time and in a meaningful manner, for a hearing appropriate to the nature of the case.  *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (emphasis added).  Here, Potter had a statutory right to appeal any improper revocation to the Circuit Court and chose not to do so.  Specifically, Ark. Code Ann. §14-56-425 provides as follows:

> In addition to any remedy provided by law, appeals from final action taken by the administrative and quasi-judicial agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure which applies to appeals in civil actions from decisions of inferior courts, including the right of trial by jury.

*See Green v. City of Jacksonville*, 357 Ark. 517, 182 S.W.3d 124 (2004).

In the present case, Potter does not, and cannot, allege that he appealed any adverse decision on the part of Tontitown to circuit court.  Instead he has skipped the procedural requirements of Ark. Code Ann. §14-56-425 and brought the present action in federal court. **One cannot claim a lack of**

**procedural due process when he has not availed himself of existing procedures**. *Roy*, 902 F. Supp. at 876-77 (emphasis added); *Anderson v. Douglas County*, 4 F.3d 693, 574, 578 (8ᵗʰ Cir. 1993) ("Assuming a landowner has a protectable property interest, procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard."). Simply put, Potter had a meaningful opportunity to be heard and chose not to pursue it.[3]  As such, this claim should be dismissed as a matter of law.

### 4.      Equal Protection

Next, Potter alleges that Tontitown has violated his right to equal protection under the law, by not providing water or granting him a plumbing permit.  (¶ 182).  Further, Potter claims that Tontitown has provided a plumbing permit and/or water to a list of individuals that are similarly situated to the Potters.  (¶ 179).  The Complaint does not allege any facts to support these conclusory allegations.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.  *Stone v. City of Hot Springs*, ___ F.Supp. 2d. ___, 2006 U.S. Dist. LEXIS 31171 (W.D. Ark. 2006).  In order to successfully plead an equal protection claim, **a plaintiff must, at a minimum, allege facts** to support that he or she was treated differently than similarly situated persons at the hands of a government official and that the treatment was tainted by a purposeful intent to discriminate for an invalid reason.  *Id.*  (emphasis added).  Moreover, a party claiming a violation of equal protection must establish that he or she is similarly situated to other applicants for the license, permit, or other benefit being sought,

---

[3] Despite the fact that Potter has brought three state actions concerning the RV Park, at no time has he sought relief under Ark. Code Ann. §14-56-425.

**particularly with respect to the same time period**.  *Anderson*, *supra* (emphasis added).  The

pleading requirement of the Equal Protection Clause requires that a complaint allege sufficient facts

to meet the above-mentioned tests, and mere conclusory allegations are insufficient.  *Stone*, *supra*;

and *Chestnut Ridge Associates, LLC v. Village of Chestnut Ridge,* 194 Fed. Appx. 76, 2006 U.S.

App. LEXIS 22828 (2nd Cir. 2006) (unpublished opinion) (dismissing complaint due to failure to

allege facts showing lack of a rational basis for disparate treatment).

This court has recently addressed similar facts in the case of *Stone v. City of Hot Springs*,

*supra*.  In *Stone*, the plaintiff, Brittani Stone, filed an action in the Western District of Arkansas

against the City of Hot Springs based on allegations that the City harassed, ridiculed, and demeaned

her.  Further, Stone claimed that the City targeted her because she was an African-American and

unfairly applied city ordinances in an attempt to force her out of business.

According to Stone's Complaint, "[o]ther businesses owned by white citizens not engaged

to (and in business with) African-Americans have been accused by the City of Hot Springs of being

in violation of the same ordinances plaintiff is accused of violating, but those businesses have

received preferential treatment and have been allowed to continue business operations."  *Id* at *3.

In ruling on the City's Motion to Dismiss, the *Stone* court held as follows:

> This statement alone is insufficient to state an equal protection claim. The Plaintiff
> does not allege that the "other businesses" were conducting the same business as
> Plaintiff, were subject to the same restrictions, laws, ordinances, etc., as Plaintiff that
> would render them "similarly situated" to Plaintiff.

*Id.* at *4 (*citing Hosna v. Groose*, 80 F.3d 298 (8th Cir. 1996) (for purposes of an equal protection

analysis, the plaintiff must be similarly situated to another group for purposes of the challenged

government action).  Ultimately, this court held that Stone's conclusory allegations were insufficient

to survive a Motion to Dismiss.  *Id.*

12

As was the case in *Stone*, Potter's Second Amended Complaint asserts only conclusory statements and fails to allege any factual support that the individuals listed in paragraph 179 are, in fact, "similarly situated."  To begin with, Potter intends for his property to be used as **an RV Park and a private residence**.  (See ¶ 25).  In contrast, Potter alleges that the individuals listed in paragraph 179 have requested and received "**water to their personal residences.**"  (¶ 179).  Nowhere does the Second Amended Complaint allege that any of the listed persons requested water for a tract that included a personal residence AND an RV Park or large scale commercial development.

In addition, the fact that there is no similarly situated party is demonstrated by the nature of the alleged unequal treatment contained in the Second Amended Complaint as follows: (1) the requirement of decentralized sewer for the RV Park, (2) road improvements to accommodate RV Park related traffic, (3) a pump station for the RV Park's eventual connection to the sewer system, and (4) questioning about whether the Potters were requesting water for their personal residence or the planned RV Park located on the same tract of land.  (¶¶ 179, 184).  None of these requirements are necessary for properties that only contain a single personal residence.  Instead, each requirement relates to the RV Park intended to be placed on the property.

Potter has also failed to allege that he is similarly situated to his neighboring landowners in respect to the time period in which he applied for a plumbing and/or water permit.  *See Anderson*, *supra* (holding that a party claiming a violation of equal protection must establish that he or she is similarly situated to other applicants for the license, permit, or other benefit being sought, **particularly with respect to the same time period**).  This issue is especially relevant in this case given the effective dates of the regulations at issue.  Overall, because Potter has failed to allege facts

to show any similarly situated property owner who was treated differently, the Equal Protection Claim must be dismissed.

### 5.     Claims under 42 U.S.C. §1985

Next, Potter alleges that the City of Tontitown has violated 42 U.S.C. §1985 (3),[4] involving conspiracies.  Section 1985 (3) states in pertinent part the following:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

This cause of action fails for three distinct reasons.

First, this Court has recently held that, "the law presumes that municipalities are incapable of entering into conspiracies. Hence, municipalities cannot be liable in actions brought pursuant to Section 1985 to begin with."  *See Stone v. City of Hot Springs*, *supra* (*citing Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998)).  As such, Potter's §1985 can be immediately dismissed as a matter of law.

Second, the Eighth Circuit has held that "conspiracy claims require allegation of specific facts showing meeting of minds, mere allegations of conspiracy without stating sufficient facts about a mutual understanding or meeting of the mind do not state a claim under 42 U.S.C. §1985." *Id. See also Snelling v. Westhoff*, 972 F.2d 199 (8th Cir. 1992). Here, Potter's Second Amended Complaint does not include a single allegation involving a meeting of the minds; thus, Potter's §1985 claim should be dismissed.

---

[4]  42 U.S.C. §1985 (1) and (2) are not relevant to the facts of this case.

Third, in *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), the United States Supreme Court

interpreted §1985 (3), and provided as follows:

> [T]he statute [§1985] was meant to reach private action does not, however, mean that
> it was intended to apply to all tortious, conspiratorial interferences with the rights of
> others . . . The language requiring intent to deprive of equal protection, or equal
> privileges and immunities, means that **there must be some racial, or perhaps**
> **otherwise class-based, invidiously discriminatory animus behind the**
> **conspirators' action**.  The conspiracy, in other words, must aim at a deprivation of
> the equal enjoyment of rights secured by the law to all.

(Emphasis added).  Contrary to the requirements of the *Griffin* court, Potter contends that the alleged

conspiracy was motivated by the personal interest of Mick Wagner and other non-citizens of

Tontitown.  The allegations in the Second Amended Complaint clearly prove this point:

> Mick Wagner's actions have been motivated by self-interest. (¶ 102)

> Tontitown is deliberately using its governmental authority to protect and advance
> the interest of one entity or person, Mick Wagner over Potter. (¶ 146)

> Tontitown's actions served no legitimate governmental function, but were
> motivated by the private interests of Mick Wagner. (¶ 148)

> The granting of a right of way for the extension of Kelly Road does not further
> a legitimate governmental interest other than to stop the RV Park and advance the
> personal interest of Mick Wagner and/or other citizens and non-citizens of
> Tontitown. (¶ 176)

Nowhere in Potter's Second Amended Complaint does he contend that the alleged conspiracy was

motivated by a racial, or some other class-based animus.  Therefore, based on the Supreme Court's

holding in *Griffin*, Potter's §1985 claim must be dismissed.

**D.**    **Potter's Federal Law Claims – and corresponding request for damages under 42 U.S.C. §§ 1983, 1985 – should be summarily dismissed based on his failure to identify a valid, constitutionally protected property interest.**

The United States Supreme Court has held that a local government, and its officials, can be sued directly under 42 U.S.C. §1983 if it implements or executes a policy statement, ordinance, regulation, or decision that violates an individual's constitutional right. *See Nelson v. Campbell*, 541 U.S. 637 (2004). Moreover, the Court has said that the threshold requirement this statute relates to "whether the plaintiff has been deprived of a right secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137 (1979). Unless a deprivation of some federal constitutional or statutory right has occurred, §1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate. *Id*. Simply put, without a constitutional violation, there can be no recovery under §1983. *Id*.

Here Potter contends to have a "constitutionally protected property interests" in the following: (1) a conditional permit from Tontitown; (2) a conditional preliminary plat approval from Washington County; (3) being free from irrational, arbitrary, and capricious Water and Sewer Commission guidelines; and (4) a plumbing permit for his personal residence. (¶145).[5] As stated in more detail below, none of these alleged "rights" is protected by the Constitution. As a result, each of the Potters' federal law claims should be dismissed as a matter of law.

**1.    Conditional permit from Tontitown**

To begin with, Potter claims to have a constitutionally protected property interest in the conditional permit from the City of Tontitown. (¶145). This argument can also be quickly dismissed. According to the Potter, the City of Tontitown told the Potters that in order to obtain a

---

[5] Potter's "constitutionally protected property interests" are listed out of order as compared to the Second Amended Complaint.

building permit, they would have to acquiesce to several conditions, including: (1) an extension of Kelly Road; (2) the installation of a decentralized sewer system; and (3) a sewage lift station.  (¶ 63, 64, 65).  It is undisputed that these conditions were never met and, ultimately, Potter removed his application from consideration.  (¶ 75).

Judge Posner once wrote that property "is what is securely and durably yours under state [or federal] law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983). Any property right to be gained by the alleged conditional permit did not exist unless and until the conditions were met, which Potter has alleged never happened.  When Potter withdrew all of his applications pending before the City without either satisfying the conditions or appealing the decision to require them, he abandoned any potential property interest the conditional permit may have provided.  As such, Potter cannot claim a property interest in the conditional permit from Tontitown.

### 2.       Conditional  preliminary plat approval from Washington County

Second, Potter claims to have a property interest in the conditional preliminary plat approval from the Washington County Planning Commission.  (¶145). This allegation can be quickly dismissed based on express language contained in Judge Smith's Order:

> **[A]ll County approvals related to the subject property and project, including the Preliminary LSD Approval granted by the Washington County Planning Board on or about October 6, 2006, are declared null and void**.

(Emphasis added). Accordingly, the doctrines of *res judicata* and collateral estoppel precludes this court from considering Potter's alleged "right." It goes without saying that Potter cannot claim a property interest in something that has been declared null and void by a court of competent

jurisdiction.

### 3.      Being free from Tontitown's regulations

Third, Potter claims to have a property interest in being free from "irrational, arbitrary, and capricious Water and Sewer Commission guidelines." (¶145).  The Eighth Circuit and the Arkansas General Assembly both recognize that a municipal government has the inherent power to make all rules and regulations with respect to the use and enjoyment of one's property rights that are necessary in the preservation of public health, morals, comfort, order, and safety.  *See City of Marysville v. Standard Oil Co*., 27 F.2d 478 (8th Cir. 1928) *aff'd*, 279 U.S. 582 (1929); Ark. Code Ann. § 14-55-102 (1998).[6]  Moreover, municipalities have wide discretion in these matters.  *See Smith v. City of Arkadelphia*, 336 Ark. 42, 46, 984 S.W.2d 392, 394 (1999).

Here, at all times relative to the Complaint, Potter's property has been located either within Tontitown's planning jurisdiction or within the actual city limits.[7]  In *Bituminous Materials v. Rice County*, 126 F.3d 1068 (1997), the Eighth Circuit gave its own definition of a "protected property interest":

> A protected property interest, which is a question of state law, **is a legitimate claim to entitlement as opposed to a mere subjective expectancy**.  A claim to entitlement arises, for these purposes, when a statute or regulation places substantial limits on the government's exercise of its licensing discretion.  Thus, the holder of a land use permit has a property interest if a state law or regulation limits the issuing authority's

---

[6] Ark. Code Ann. § 14-55-102 (1998) provides as follows:

> Municipal corporations shall have the power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.

[7] Both of these issues were address in the state court where they were conclusively determined in favor of Tontitown.

discretion to restrict or revoke the permit by requiring that the permit issue upon compliance with terms and conditions prescribed by statute or ordinance.  Procedures alone do not create a substantive property right.

[Citations omitted].  *Bituminous*, *supra*; *see also Littlefield v. City of Afton*, 785 F.2d 596, 600-02 (8th Cir. 1986) (property right only attaches if a land-use authority lacks discretion to deny an application).  Here, the Potters do not cite to any state law that would limit Tontitown's ability to regulate the property in question.  Needless to say, the Potters cannot claim a property interest in an abstract notion that their land should be free from government regulation.

### 4.      Plumbing permit

Finally, Potter claims to have a constitutionally protected property interest in receiving a plumbing permit from the City of Tontitown.  (¶ 145).[8]  According to Potter, a plumbing permit would allow him to obtain water.  (¶ 142).

Prior to the annexation, Potter's land was located outside of the Tontitown city limits and was subject to Ark. Code Ann. § 14-234-111(a).  Specifically, §111(a) provides that a municipal owned waterworks "may," but is not required to, extend water service to users outside the City's corporate limits.  Put another way, "[n]o non-resident has an absolute right to have water and sewer services extended."  *See City of Little Rock v. Chartwell Valley Ltd. Partnership*, 299 Ark. 542, 772 S.W.2d 616 (1989).  Based on this reasoning, Potter cannot claim a protected property interest in a plumbing permit prior to annexation.

Following the annexation, Potter may have had a "subjective expectancy" in obtaining a plumbing permit, but he does not have a constitutionally protected interest in one.  As discussed above, a protected property interest is a legitimate claim to entitlement as opposed to a mere

---

[8]   Despite his assertions, Tontitown has granted Potter a plumbing permit.  Nonetheless, Potter's allegations will be taken as true for purposes of this Motion to Dismiss.

subjective expectancy. *Bituminous Materials*, *supra*; *see also Smith v. City of Arkadelphia*, 336 Ark. 42, 984 S.W.2d 392 (1999) (holding that no vested property rights were acquired by obtaining a permit). The *Bituminous* court recognized that a property interest only arises after the claimant has successfully identified a statute or regulation that would place substantial limits on the government's exercise of its discretion. Once again, Potter has failed in this respect. The Second Amended Complaint does not identify a single statute or regulation that limits Tontitown's authority to issue – or revoke – a plumbing permit. As such, Potter has not established a constitutionally protected property interest in the same.

Based on prior pleadings, Tontitown anticipates that Potter will direct this court to *Tankersley Bros. Industries v. City of Fayetteville,* 296 S.W.2d 492 (1956). In *Tankersley*, the Arkansas Supreme Court held that "once a city properly grants a building permit to a property owner and, in reliance upon the permit, he expends money and takes substantial steps toward the construction, the property owner gains a protectable property interest." Key to the court's ruling in *Tankersley* was that the permit was properly granted and money and effort was expended in reliance upon the permit. *Id.* In the present case, Potter does not allege to have expended any money or effort in reliance upon the plumbing permit, nor could he do so without running afoul of Rule 11. Potter has alleged that he expended money and effort in reliance upon the County's preliminary conditional approval, but not in reliance upon the plumbing permit. Without such expenditures in reliance upon the plumbing permit, the granting of the permit creates no protectable property interest.

Overall – taking the allegations in the Second Amended Complaint as true – Potter has not identified a single valid, constitutionally protected property interest. For this reason, each of Potter's federal law claims should be dismissed as a matter of law. Likewise, each of the Potters' claim for

20

damages under 42 U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1988 should also be dismissed.

**D.     Potter's State Law Claims Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

Potter's Second Amended Complaint attempts to allege state law claims against Tontitown for (1) breach of contract, (2) promissory estoppel, and (3) tortious interference.  For the reasons stated below, each of these claims should be dismissed.

**1.     Breach of Contract**

In support of his breach of contract claim, Potter alleges the following:

> The Defendants entered into a valid agreement to provide a plumbing permit allowing water to the Potters' personal residence . . . The Defendants have without justification or excuse breached its contract with the Potters by arbitrarily, capriciously, and in bad faith refusing to provide a plumbing permit allowing Potter water at his person residence which is in violation of the express and implied terms of the contract and the implied covenant of good faith and fair dealing."

(¶¶ 190, 198).  This claim can be quickly dismissed because the plumbing permit described by Potter, is not a "contract" as a matter of law.

The Arkansas Supreme Court faced a similar set of facts in *Smith v. City of Arkadelphia*, 336 Ark. 42, 984 S.W.2d 392 (1999).  In *Smith*, a tornado destroyed manufactured homes in and around the City of Arkadelphia, many of which were located on Plaintiff-Smith's property.  Immediately following the storm, Smith acquired building permits to replace the damaged homes.  After issuing the permits – and before Smith could replace the homes – the city amended its ordinances to require stricter regulations for the construction and safety features of manufactured homes.  Smith claimed that his permits, together with some grading and gravel work in preparing the sites, created a vested property right, thereby exempting him from the amended ordinances.  The *Smith* court disagreed and explained as follows:

**The permit was merely the granting of a privilege, and did not constitute a contract between the city and appellant**. No vested rights were acquired by obtaining a permit, and none arose in the acquisition of property or preparations for the construction of the building prior to the enactment of the new ordinance, so we do not have to deal here with the question of displacement of vested rights by the passage of the ordinance . . .

*Smith v. City of Arkadelphia*, 336 Ark. at 46 (emphasis added); *see also Wilder v. Little Rock*, 150 Ark. 439, 234 S.W. 479 (1921). In short, the granting of a plumbing permit to Potter's residence is not considered a contract between the parties, as a matter of law. Accordingly, a revocation of said permit cannot constitute a breach of contract and Potter's claim should be dismissed as a matter of law.

### 2.        Promissory Estoppel

Potter sets forth two separate promissory estoppel claims. The first is based on Tontitown's alleged promise that Potter would be permitted to obtain water from Tontitown. (¶ 202). As noted above, while the factual allegations of the Complaint are assumed true, mere conclusory allegations without supporting facts are insufficient to avoid dismissal. *See Stone v. City of Hot Springs*, *supra*. Here, the Second Amended Complaint does not allege any facts to support the idea that Tontitown "promised" Potter that he would receive water.

In contrast, Potter's Second Amended Complaint alleges that in order to receive water, Tontitown subjected Potter to the following: (1) extensive questioning (¶ 178), (2) required him to pay for improvements in the amount of $18,000 to $30,000 (¶ 180), (3) required him to provide a right of way extension to Kelly Road (¶ 184), and (4) required him to install a lift station and/or decentralized sewer system (¶ 184). In short, when taken as true, Potter's first promissory estoppel claim is based on a conclusory allegation that is contradicted by the underlying factual allegations; as such, this claim should be dismissed as a matter of law.

Potter's second promissory estoppel claim alleges that the City of Tontitown promised that it "could not prevent the Potters' development as the Potters' development was out in the county." (¶ 202).  The sole basis for this claim appears at paragraph forty (¶ 40) of the Second Amended Complaint and alleges the following:

> Potter attended a planning commission meeting where **one of the commissioners** stated that Tontitown could not stop him because he was out in the county.

(¶ 40) (emphasis added).  To put this in context, the alleged promise that forms the basis of Potter's promissory estoppel claim was made by a single individual who sat on the planning commission and voiced an opinion.  Potter never alleges that the planning commission voted on the subject; he never alleges that a resolution was passed; he does not even claim that there was an informal consensus of the commission.  Instead, Potter has based his entire claim on one man's opinion.

The blackletter law on promissory estoppel is found in the Restatement (Second) of Contracts and requires that the following elements be proven:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996).  Needless to say, Potter's second promissory estoppel claim is deficient.  It is axiomatic to say that a single individual cannot bind a municipality simply by voicing his opinion at a public meeting.  Nowhere does Potter allege that the "promise" upon which he "relied" was anything more then the opinion of one commissioner.  In short, Potter's second promissory estoppel claim fails to set forth any of the required elements to survive a 12(b)(6) motion; as such, this claim should be summarily dismissed.

## 3.    Tortious Interference with Business Expectancy

Finally, Potter has asserted a claim for tortious interference against Tontitown.  In order for a plaintiff to establish a claim for tortious interference with a business expectancy he must allege facts to support all of the following: (1) existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party or parties; (3) intentional interference inducing or causing breach of or termination of the relationship or expectancy; and (4) resultant damage.  *Stewart Title Guaranty Company v. American Abstract & Title Company*, No. 04-789, ___ Ark. ___, ___ S.W.3d ___, 2005 Ark. LEXIS 610, at *9 (Oct. 13, 2005) (*citing Vowell v. Fairfield Bay Community Club, Inc.*, 346 Ark. 270, 276-77, 58 S.W.3d 324, 329 (2001)).  Moreover, under Arkansas law, in order for a defendant's actions to constitute tortious interference not only must the above four factors be established, but the defendant's conduct must also be "improper."  *Stewart Title*, 2005 Ark. LEXIS 610, at *9 (citing *Hunt v. Riley*, 322 Ark. 453, 909 S.W.2d 329 (1995))

In the instant case, Potter's Second Amended Complaint fails to state a cause of action in at least three respects.  First, Potter contends that he has "a valid business expectancy and pecuniary advantage in county approval for development on Potter's Field."  (¶ 208).  Judge Smith's Order is in direct conflict with Potter's assertion and provides in pertinent part as follows:

> **[A]ll County approvals related to the subject property and project**, including the Preliminary LSD Approval granted by the Washington County Planning Board on or about October 6, 2006, **are declared null and void**.

Based on Judge Smith's Order and the doctrine of *res judicata*, Potter is precluded from arguing that he had county approval for the development of the RV Park. *See McAdams v. McAdams*, 357 Ark. 591, 184 S.W.3d 24 (2004) ("Under the doctrine of res judicata a party is precluded from re-litigating an issue that has already been decided or could have been decided in previous litigation.").  Without

valid county approval, Potter cannot show that he had a valid business expectancy to support his claim for tortious interference.  As such, this claim must fail as a matter of law.

Second, in the alternative, Potter has failed to allege a valid business expectancy because, at all times, it was subject to contingencies.  Arkansas law provides that "an expectancy subject to a contingency, which occurred, is not tortious interference with business expectancy." *Windsong Enterprises, Inc. v. Upton,* ___ Ark. ___, ___ S.W.3d ___, 2006 Ark. LEXIS 208 (Mar. 23, 2006); *Donathan v. McDill*, 304 Ark. 242, 800 S.W.2d 433 (1990).  This is true even if the alleged interference caused the contingency to occur and was motivated by self-interest.

In *Donathon v. McDill*, *supra*, Donathon hired a title company to research the title to a parcel of land he wished to buy.  The title company advised that the land was soon to be sold for nonpayment of taxes.  Donathon and McDill, the title company's president, went to the foreclosure sale and each bid on the property.  Donathon's bid was accepted.  Following the sale, McDill approached the landowner and advised him of his right to redeem, which the landowner did.  McDill then negotiated the purchase of the property from the landowner.  Donathon sued for interference with business expectancy.  The Arkansas Supreme Court ruled that Donathon's expectancy was at all times subject to the continency of the landowner's statutory right to redeem.  Even though McDill assisted the landowner in redeeming the property for the purpose of undoing Donathon's purchase and acquiring the property himself, the landowner had a statutory right to redeem, thus, no tort was committed.  *See also Windsong, supra* (holding that a property owner did not have a valid business expectancy because his expectancy was, at all times, subject to a contingency).

In the instant case, Potter's Second Amended Complaint contains the conclusory assertion that its expectancy "was not subject to any contingency that defendants or any of their actors could

bring about with any basis in law."  (¶ 209).  Potter's conclusory allegation is contradicted by his

own factual allegations which demonstrate a number of contingencies.

      Potter's Second Amended Complaint alleges as follows:

> Potter's preliminary plat approval from the Washington County Planning Board
> was contingent in that – by its own terms – the approval would be null and void
> if it was determined that Tontitown had jurisdiction over the project.  (See
> Exhibit "O" to the Second Amended Complaint)

> That Potter's Field was within Tontitown's planning jurisdiction (¶ 43).

> That Potter was told by Tontitown that he would have to apply to obtain a
> building permit in order to build his personal residence and RV Park.  (¶ 42).

> That Potter was informed by Tontitown that his subdivision would be governed
> by Tontitown's subdivision ordinance. (¶ 60);

> That Potter needed a variance to build the RV Park, but the conditions attached
> to the granting of the variance would prevent the viability of the project (¶¶ 62-
> 66, 70);

> That Potter withdrew his application before Tontitown and sought regulatory
> approval from Washington County ( ¶¶ 75, 92);

All of these allegations make clear that the business expectancy (the RV Park) was contingent upon

regulatory approval by Tontitown and/or Washington County

      Similarly, Potter has also alleged that the landowners surrounding his property attempted to

"annex the land including Potter's Field in to the city limits of Tontitown in order to force upon

Potter the onerous conditions originally imposed by Tontitown and destroy the viability of the

project." (¶80).  Again, Potter's own allegation confirms that his alleged "business expectancy" was

subject to a contingency; more specifically, the statutory rights of surrounding property owners to

seek annexation.

      Just as in *Windsong* and *Donathon*, Potter's expectancy was at all times subject to (1) the

regulatory approval of Tontitown and/or Washington County, and (2) the statutory right of the others to seek annexation. Judge Smith's Order has since confirmed that these two contingencies are now realities. In sum, Potter's alleged business expectancy was at all times subject to numerous contingencies, which occurred. As such, Potter's claim should be summarily dismissed.

Third, Potter does not allege to have *lost* his expectancy resulting in damages. Arkansas law specifically requires a "*loss of* the expectancy and resulting damages." *Windsong Enterprises, Inc., v. Upton*, _____ Ark. _____, _____ S.W.3d _____, 2006 Ark. LEXIS 208 at *10 (March 23, 2006) (emphasis added); *Stuart Title, supra*; *Donathon*, *supra* (emphasis added). Here, Potter never alleges a loss of his expectancy (i.e. the RV Park), only a "disruption" of the expectancy. (¶ 216). Arkansas law requires a loss or termination of the expectancy in order to amount to an actionable tort; therefore, Potter's claim must, once again, be dismissed.

Overall, Potter has failed to allege, (1) a valid business expectancy, (2) any improper conduct on the part of Tontitown, and (3) that he actually suffered a loss. As such, Potter's tortious interference claim must be dismissed as a matter of law for failure to plead sufficient facts.

## IV.    CONCLUSION

Potter's Second Amended Complaint fails to set forth sufficient facts to support his federal claims for violation of substantive due process, violation of procedural due process, and unconstitutional taking. As such, he is not entitled to any damages pursuant to 42. U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1988 and these claims should be dismissed, as a matter of law, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In addition, the Second Amended Complaint also fails to set forth sufficient facts to support his state law claims for breach of contract and tortious interference; therefore, these claims should

also  be dismissed pursuant to Rule 12(b)(6).

WHEREFORE, PREMISES CONSIDERED, Tontitown prays that the Court grant its Motion

and Dismiss Plaintiffs' Second Amended Complaint in its entirety, and grant Defendants any other

relief to which they may prove themselves entitled, whether specifically prayed for herein or not.

Respectfully Submitted,

CITY OF TONTITOWN, TONTITOWN
PLANNING COMMISSION AND TONTITOWN
WATER AND SEWER COMMISSION

By: /s/ Mark W. Dossett

Mark W. Dossett          #95174
J.R. Carroll             #2003149
Jeff Fletcher            #2005129
DAVIS, WRIGHT, CLARK,
       BUTT & CARITHERS, PLC
P.O. Box 1688
Fayetteville, AR 72702
(479) 521-7600
mdossett@daviswrightlaw.com

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Mr. George Butler; Mr. Westbrook Doss; and Mr. Curtis Hogue.

By: /s/ Mark W. Dossett

Mark W. Dossett #95174
J.R. Carroll #2003-149
Jeff Fletcher # 2005-129
DAVIS, WRIGHT, CLARK,
BUTT & CARITHERS, PLC
P.O. Box 1688
Fayetteville, AR 72702
(479) 521-7600
mdossett@daviswrightlaw.com